IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**CYNTHIA M. CAMP,**

      **Plaintiff,**

**vs.**                         **Case No.  4:15cv409-CAS**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social**
**Security,**

      **Defendant.**

_____/

## MEMORANDUM OPINION AND ORDER

This is a Social Security case referred to the undersigned United States Magistrate Judge upon consent of the parties and by Senior United States District Judge William Stafford.  ECF No. 10.  *See* Fed. R. Civ. P. 73; 28 U.S.C. § 636(c).  After careful consideration of the entire record, the Court affirms the decision of the Acting Commissioner (Commissioner).

## I.  Procedural History

On October 18, 2011, Plaintiff, Cynthia M. Camp, filed an application for Supplemental Security Income (SSI) benefits alleging disability beginning January 6, 2006, based on fibromyalgia, neuropathy, knee condition, Type II diabetes, sleep apnea, hypothyroidism, high cholesterol,

and depression.  Tr. 13, 103-04, 235-40, 257.  (Citations to the transcript/administrative record, ECF No. 12, shall be by the symbol "Tr." followed by a page number that appears in the lower right corner.)

Plaintiff's application was denied initially on April 4, 2012, and upon reconsideration on July 6, 2012.  Tr. 13, 103-36, 143-59.  On August 7, 2012, Plaintiff's attorney/disability advocate, who had been representing Plaintiff from on or about May 14, 2012, Tr. 150, requested a hearing.  Tr. 13, 160-62.  (On August 27, 2012, Plaintiff's attorney withdrew from representing her.  Tr. 163.)

On October 15, 2013, Plaintiff appeared in a hearing in Tallahassee, Florida, conducted by Administrative Law Judge (ALJ) Stacy Paddack.  Tr. 13, 63-68.  Plaintiff appeared pro se and the ALJ explained her right to representation.  Tr. 65-66.  The ALJ stated on the record that Plaintiff had signed an acknowledgment of postponement of the hearing in order to obtain a representative.  Tr. 67; *see* Tr. 201 (Plaintiff's waiver of right to representation), Tr. 203 (Plaintiff's request for a postponement).  The hearing on the merits of Plaintiff's application was postponed and Plaintiff was offered the opportunity to secure representation.  Tr. 67.  Plaintiff was advised that the next time Plaintiff appeared for a hearing, if she did not have a representative, "absent extraordinary circumstances, we will be

going forward without a representative," which was understood by Plaintiff.
Tr. 67.

On December 12, 2013, Plaintiff appeared pro se and testified at a
hearing in Tallahassee, Florida, held by ALJ Paddack.  Tr. 13, 31-54.  ALJ
Paddack reiterated to Plaintiff that that they had discussed her right to
representation during the prior hearing, that Plaintiff had sought a
postponement of the hearing to find a representative, and that Plaintiff was
appearing at the hearing without representation.  Tr. 33.  Plaintiff did not
request additional time to find representation.  *Id.*  The ALJ also told
Plaintiff that in light of her SSI application, Plaintiff was not eligible for SSI
benefits before the application date of October 18, 2011, even though
Plaintiff alleged she had been disabled in 2006.  As a result, the ALJ told
Plaintiff that she would not be covering "those extra five years."  Tr. 38.
The ALJ had noted that Plaintiff had filed applications in September 2009
and April 2011.  Tr. 37-38.  John B. Black, Ed.D., an impartial vocational
expert (VE), also appeared at the hearing.  Tr. 54-61, 223-27 (Resume).

On June 11, 2014, the ALJ issued a decision denying Plaintiff's
application for benefits.  Tr. 13-24.  The ALJ noted that she had "secured
additional evidence post-hearing" and that

> [t]he medical evidence of records were proffered to the claimant with
> notices dated January 29, 2014[,] and February 11, 2014, for a

response within 10 days of the date she received the notice.  A
response was received from the claimant with an objection to
Volunteers in Medicine Gautier not being able to find her records.
However, records were eventually found and accepted into evidence
(Exhibits 20E, 21E, 22E, 24E, 9F, 10F, 11F, 12F).

Tr. 13; *see* Tr. 342-55, 447-530 (notices to Plaintiff and additional records,

Exhibits 20E-24E and 9F-12F).

On July 23, 2014, Plaintiff's current representative filed a request for

review and requested additional time to submit a memorandum.  Tr. 5-9.

On June 17, 2015, the Appeals Council denied Plaintiff's request for

review, making the ALJ's decision the final decision of the Commissioner.

Tr. 1-4; *see* 20 C.F.R. § 404.981.

On August 18, 2015, Plaintiff filed a Complaint with the United States

District Court seeking review of the ALJ's decision.  ECF No. 1.  The

parties filed memoranda of law, ECF Nos. 22 and 23, which have been

considered.

## II.  Findings of the ALJ

The ALJ made several findings:

1.  "The claimant has not engaged in substantial gainful activity since
October 18, 2011, the application date."  Tr. 15.

2.  "The claimant has the following severe impairments: osteoarthritis
in the left knee; diabetes; chronic obstructive pulmonary disease
(COPD) and obstructive sleep apnea (OSA)."  *Id.*  The ALJ
considered other diagnoses, but determined that "the claimant has no
significant functional limitations caused by these conditions" and, as a

result, they were rated as nonsevere.  Tr. 15-18.  The ALJ also considered the four broad functional areas known as the "paragraph B" criteria that are set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments. Tr. 16.  The ALJ determined that the claimant has *mild* limitation in activities of daily living, social functioning and in concentration, persistence, or pace, as well as *no* episodes of decompensation which have been of extended duration.  Tr. 16-17.  Further, at step two of the sequential evaluation process, the ALJ considered Plaintiff's allegation of "having fibromyalgia all over her body."  Tr. 18. The ALJ noted, however, that "she has not been diagnosed pursuant to the requirements of Social Security Rule [sic] 12-2p.  Therefore, I find that the claimant's diagnosis of unspecified myalgia and myositis is more appropriate (Exhibit 12F/10)."  *Id.*  Plaintiff does not argue that the ALJ erred at step two.  ECF No. 22.

3.  "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 18.

4.  "[T]he claimant has the residual functional capacity [RFC] to perform light work as defined in 20 CFR 416.927(b) except she will need a sit/stand at will option.  She can never climb ladders, ropes or scaffolds, but can occasionally climb ramps and stairs, balance, stoop, crouch, kneel and crawl.  She should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases and unprotected heights.  Her work is limited to simple, routine, repetitive tasks due to pain distraction."[1]  Tr. 18.

5.  "The claimant is unable to perform any past relevant work," such as a Cashier II and Housekeeping Cleaner, both with a Specific Vocational Preparation Level (SVP) of two and light exertional level as defined and performed.  The claimant's past work also included

---

[1]  By definition, in part, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds."  20 C.F.R. § 416.967(b); *see* Dictionary of Occupational Titles (DOT) (4th Ed., Rev. 1991), Appendix C: Components of the Definition Trailer, at § IV Physical Demands-Strength Rating (Strength) (definition of light work).

that of a babysitter with an SVP of two and a medium exertional level as defined and performed.  Tr. 22.

6.  The claimant was 49 years old, which is defined as a younger individual age 18-49, the date the application was filed, but the claimant subsequently changed age category to closely approaching advanced age.  Tr. 23.

7.  "Considering the claimant's age, education, work experience and [RFC] there are jobs that exist in significant numbers in the national economy that the claimant can perform," such as Cashier II and Ticket Seller, both with an SVP of two and light exertional level, and Silver Wrapper, with an SVP of one and light exertional level.[2]  Tr. 23-24.

8.  "The claimant is not been under a disability, as defined in the Social Security Act, since October 18, 2011, the date the application was filed."  Tr. 24.

## III.  Legal Standards

This Court must determine whether the Commissioner's decision is

supported by substantial evidence in the record and premised upon correct

legal principles.  42 U.S.C. § 405(g); <u>Chester v. Bowen</u>, 792 F.2d 129, 131

---

[2]  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 416.968(a).  A Specific Vocational Preparation (SVP) of two means "[a]nything beyond short demonstration up to and including 1 month."  DOT (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP. "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  *Id.*  Unskilled work corresponds to an SVP of one and two.  Social Security Ruling (SSR) 00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000).  Further, unskilled work is work involving understanding, remembering, and carrying out simple instructions; making simple work-related decision; dealing with changes in a routine work setting; and responding appropriately to supervision, co-workers, and usual work situations.  SSR 85-15, 1985 SSR LEXIS 20, at *10-11 (1985).

(11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see 20 C.F.R. § 416.909 (duration requirement).  Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212 (2002).

The Commissioner analyzes a claim in five steps.  20 C.F.R.

§ 416.920(a)(4)(i)-(v):

> 1.  Is the individual currently engaged in substantial gainful
> activity?
>
> 2.  Does the individual have any severe impairments?
>
> 3.  Does the individual have any severe impairments that meet
> or equal those listed in Appendix 1 of 20 C.F.R. Part 404,
> Subpart P?
>
> 4.  Does the individual have the residual functional capacity
> (RFC) to perform work despite limitations and are there any
> impairments which prevent past relevant work?[3]
>
> 5.  Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in

disapproval of the application for benefits.  A positive finding at step three

results in approval of the application for benefits.  At step four, the claimant

bears the burden of establishing a severe impairment that precludes the

---

[3] An RFC is the most a claimant can still do despite limitations.  20 C.F.R.
§ 416.945(a)(1).  It is an assessment based upon all of the relevant evidence including
the claimant's description of her limitations, observations by treating and examining
physicians or other persons, and medical records.  *Id.*  The responsibility for
determining claimant's RFC lies with the ALJ.  20 C.F.R. § 416.946(c); *see* SSR 96-5p,
1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term "*residual functional capacity
assessment"* describes an adjudicator's finding about the ability of an individual to
perform work-related activities.  The assessment is based upon consideration of all
relevant evidence in the case record, including medical evidence and relevant
nonmedical evidence, such as observations of lay witnesses of an individual's apparent
symptomatology, an individual's own statement of what he or she is able or unable to
do, and many other factors that could help the adjudicator determine the most
reasonable findings in light of all the evidence.").

performance of past relevant work.  Consideration is given to the
assessment of the claimant's RFC and the claimant's past relevant work.  If
the claimant can still do past relevant work, there will be a finding that the
claimant is not disabled.  If the claimant carries this burden, however, the
burden shifts to the Commissioner at step five to establish that despite the
claimant's impairments, the claimant is able to perform other work in the
national economy in light of the claimant's RFC, age, education, and work
experience.  Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004);
Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at
131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20
C.F.R. § 416.920(a)(4)(v), (e) & (g).  If the Commissioner carries this
burden, the claimant must prove that he or she cannot perform the work
suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011
(11th Cir. 1987).

## IV.  Legal Analysis

### Substantial evidence supports the ALJ's decision to deny Plaintiff's SSI application for benefits.

Plaintiff raises three issues for the Court's consideration: (1)
substantial evidence does not support the Commissioner and ALJ's
decision that Plaintiff is not disabled based on the ALJ's RFC assessment
to do light work; (2) the ALJ and the Commissioner committed reversible

error having not ordered additional consultative examinations; and (3) the ALJ and the Commissioner erred in discounting the medical evidence and Plaintiff's testimony regarding her pain.  ECF No. 22 at 1, 7-13.

I.

This part of the Court's decision deals with issues one and three.

Plaintiff bears the burden of proving that she is disabled, and consequently, is responsible for producing evidence in support of her claim. *See* 20 C.F.R. § 416.912(a); <u>Moore v. Barnhart</u>, 405 F.3d at 1211.  The responsibility of weighing the medical evidence and resolving any conflicts in the record rests with the ALJ.  *See* <u>Battle v. Astrue</u>, 243 F. App'x 514, 523 (11th Cir. 2007) (unpublished).  No error has been shown.

The ALJ determined that Plaintiff has the RFC to perform light work with exceptions.  Tr. 18.  In her memorandum, Plaintiff provides a statement of facts prior to providing argument.  ECF No. 22 at 2-7.  Plaintiff presents argument regarding the first and second issues without integrating relevant facts.  ECF No. 22 at 7-9, 11-13.

Nevertheless, in assessing Plaintiff's RFC, the ALJ properly considered the opinions of health care providers who treated and examined Plaintiff.  Tr. 18-22.  The ALJ found the record supported some level of

functional limitations caused by Plaintiff's impairments, but the medical evidence did not support the significant restrictions alleged by Plaintiff. Tr. 20.

On May 14, 2009, Plaintiff followed up with a health care provider at Coastal Family Health Center (CFHC)-Vancleave, Vancleave, Mississippi. Her chief complaint was hypertension.[4]  Tr. 81, 391.  Plaintiff was described as an overweight female in no acute distress, she was awake, alert, and appeared her stated age.  Under the category "skin," the following is noted: "Palpation to the skin reveals no abnormality.  15 of 18 fibromyalgia triggers positive."[5]  *Id.*  The general assessment was that the Plaintiff was instructed to exercise and follow a low salt diet and weight loss diet and to follow up in three weeks.  *Id.*  The diagnoses included: "729.1 Myalgia and myositis unspecified **Note**: fibromyalgia."  Tr. 391; *see infra* at n.6.

On June 24, 2009, Plaintiff had a follow-up visit for fibromyalgia and it was reported that she "feels like Lyrica is helping some just not enough." She was also "[h]aving problems with her left hip and even getting up

---

[4]  It appears that Plaintiff may have received care at this facility beginning in December 2005.  Tr. 354-55.  There is no mention of fibromyalgia in December 2008, March and April 2009, patient notes.  Tr. 361-69.  There are lab results for several months including February, April, September 2009, and January, April, and July 2013. Tr. 370-84.

[5]  There is no reference regarding the location of the positive trigger points.  *See* SSR 12-2p, 2012 SSR LEXIS 1, at *5-7 (July 25, 2012).

secondary to pain." Tr. 357. The physical exam is generally normal and she was reported to be in no acute distress, awake, alert, and appeared her stated age. It was noted that there was slight tenderness in lumbar area; the lumbar spine was stable; the straight leg raising test was positive; the right "IS" joint and greater trochanter or tenderness; and the pain was decreased with external hip rotation. Tr. 357; *see* Tr. 358 (June 24, 2009: "F/U in 1 month to check on pain in hip/back and from fibromyalgia. Fibromyalgia: Will increase Lyrica to 150 mg po bid (mid range dose))."

On July 20, 2009, Plaintiff followed up at CHFC for "pain in the back and hip. Patient was seen one month ago for Lyrica, Celebrex and Zanaflex. The patient was prescribed Celebrex to control the pain zanaflex. Other treatment includes: heat. Cynthia feels the discomfort has moderate improvement with treatment. The patient's medical history diabetes and HTN reviewed without changes. Fibromyalgia. Blood sugars are averaging in the 70-80's." Tr. 78, 354, 388. Plaintiff's physical exam produced generally normal results, Tr.79, 357, 389, and the diagnoses were lumbago, myalgia and myositis unspecified with a note, fibromyalgia[6];

---

[6]  A patient note of July 20, 2009, refers to an onset date "problem list" that lists dates, codes and descriptions including one dated May 14, 2009, stating: "Myalgia and myositis unspecified **Note**: fibromyalgia." Tr. 79, 355. As noted herein, the ALJ determined at step two that "claimant's diagnosis of unspecified myalgia and myositis is more appropriate" than fibromyalgia. Tr. 18.

diabetes with neurological manifestations type ii or unspecified type not stated as uncontrolled; and polyneuropathy in diabetes.  Tr. 80-81, 355-56, 390.  The "Plan" included: "Fibromyalgia: Pain fairly well controlled with Lyrica without problems with side effects."  Tr. 81, 356, 390.

Plaintiff followed up at the same facility in April 2010 for hypertension and depression and it is noted that "[c]ontributory factors include family stressors and financial stresses.  She does not suffer impaired function of daily activities.  Cynthia is doing well."  Tr. 351, 385.  Several diagnoses did not include fibromyalgia, although it appears the examination was limited in scope.  Tr. 352, 386.  From a psychiatric standpoint, Plaintiff had proper orientation to time, place, and person; her mood was normal; and appropriate affection was observed.  *Id.*

Plaintiff also sought care at Volunteers in Medicine Gautier (Volunteers), Gautier, Mississippi, from July 2010 until March 2013.[7] Tr. 516-30.  On July 14, 2010, Plaintiff complained of diabetes, fibromyalgia, and sleep apnea.  Tr. 102.  A nurse practitioner noted in part:

---

[7]  The ALJ considered Plaintiff's examination and treatment at Volunteers.  Tr. 20. The ALJ noted that Plaintiff had been diagnosed with diabetes mellitus. *Id.*  The ALJ noted that "[a]ccording to records, her visits were sporadic from October 2011 to March 2013.  During that 14-month period, she visited the medical facility five times (Exhibit 12F)."  Tr. 20.  This is a true statement.  Tr. 522.  As noted herein, Plaintiff had, however, more visits at Volunteers prior to October 2011.  *Id.*

"[c]hronic pain (fibromyalgia) interfering with sleep-Lyrica did not help.  [N]o meds have helped."  Tr. 101, 529.  On October 1, 2010, a physician noted "[n]o complaints."  Tr. 98-99, 528.  In November 2010 and February 2011, a nurse practitioner noted tenderness with left hip pain radiating down her left ankle and burning with muscle spasm lateral thigh were noted by.  Tr. 96-97, 527.  On October 4, 2011, a patient note states: "myalgia and myositis unspecified (729.1): Fibromyalgia" and "7. Fibromyalgia, uncontrolled with Lyrica, tramadol, flexeril, meloxicam.  Trial amitriptyline 25 mg, increasing slowly in 5d increments.  If not helpful, consider increasing does to 150mg vs. trial gabapentin."  Tr. 525-26; *see supra* at n.6.

The next patient note from Volunteers appears to be September 12, 2012, and the same physician provided the same notation and added in part: "[f]ibromyalgia, uncontrolled off meds; will restart amitriptyline. Discussed should take amitriptyline 100mg for at least 1 mo and probably than 150mg for one mo, before deciding it doesn't work.  At that point, could consider gabapentin."  Tr. 525.  By October 10 and December 19, 2012, it was reported, in part, that amitriptyline did not help her fibromyalgia.  Tr. 524.

Her last visit at Volunteers appears to have been on March 19, 2013, when she followed up with a nurse practitioner with Plaintiff reporting that

her left arm felt like 1,000 needles all the time and her fingers on the left hand were numb, although she had no numbness or tingling in her right arm or in either lower extremity.  Tr. 522-23.  It is noted that Plaintiff had a previous problem with her neck and left arm which was x-rayed by a chiropractor and Plaintiff was told she had a pinched nerve.  Apparently, Plaintiff was relieved by the adjustment until one and a half years ago and, on exam, she had a significant muscle spasm in her left upper back partially relieved with point pressure.  Tr. 523.

On July 25, 2012, Plaintiff went to Memorial Hospital (Memorial) at Gulfport, Mississippi, complaining of moderate left breast pain for two or three days.[8]  Tr. 487.  A review of systems was negative except for left breast pain.  Tr. 489.  EKG results were normal.  Tr. 490, 494.  Her medical history noted diabetes.  A mammogram was conducted that showed benign findings.  Tr. 490-92, 501.  Upon physical examination, Plaintiff's heart had regular rate and rhythm with normal sounds.  Tr. 489.  Her breath sounds were clear with no wheezing rails, rhronchi, or tachypnea.  *Id.*  Her extremities were non-tender with normal range of motion.  *Id.*  Plaintiff was diagnosed with unspecified breast disorder.  Tr. 486-88, 492-94.  In general, a review of systems was negative.  Tr. 489.

---

[8] The ALJ considered Plaintiff's examination and treatment at Memorial.  Tr. 20.

On August 19, 2012, Plaintiff went to Memorial.  Fibromyalgia was included as past medical history and one risk factor.  A review of systems was negative.  She was tender over her left hip and had lower back pain. Tr. 470-71.  She had several x-rays including the lateral lumbar spine that showed mild L5-S1 degenerative disc disease with no evidence of fracture or subluxation; three views of her right foot and ankle, which showed no evidence of fracture, dislocation or acute osseous abnormality; and two views of her left hip and pelvis that also showed no acute osseous abnormality.  Tr. 483-86.

On May 22, 2013, Plaintiff accessed Memorial with complaints of right wrist pain after falling.  Tr. 457.  Plaintiff's physical examination was normal except for mild swelling and tenderness noted at the right wrist.  Tr. 458-59. X-rays of the right wrist were normal.  Tr. 460-61.  Plaintiff was diagnosed with a wrist injury and given Lortab for the pain.  Tr. 461.  Past medical history included a notation for fibromyalgia.  T. 458.

On September 4, 2013, Plaintiff established care at Weems Medical Center East (Weems) in Carrabelle, Florida.[9]  Tr. 507, 511.  Plaintiff reported that she had moved from Mississippi and she did not currently

---

[9] The ALJ considered Plaintiff's examination and treatment at Weems.  Tr. 20-21.

need medication refills.  Tr. 511.  Plaintiff complained of fibromyalgia pain and fatigue and requested help to control the pain.  *Id*.  Upon physical examination, Plaintiff's heart had a regular rate and rhythm; her lungs were clear bilaterally with no wheezes, rhonchi, or rails; her breathing was unlabored and there was no swelling or deformity in her chest wall; her back spine and range of motion were normal without deformity or tenderness; and her musculoskeletal system had normal symmetry, tone, strength, and range of motion.  Tr. 509, 512.  Under review of systems and the neurological item, it is noted "fibromyalgia type activity."  Tr. 511. Otherwise, the review of systems was generally normal, except for a notation under constitutional of "fatigue."  *Id*.  Under the "objective" heading and under "neurologic," it is noted "pressure points elicited with less than 10 LBS pressure."  Tr. 511-12.  Under musculoskeletal, it is noted "diffuse myocytic pain," Tr. 511, but under the "objective" subheading and under "musculoskeletal," it is noted "[n]ormal symmetry, tone, strength, and ROM. No effusions, instability or tenderness to palpation."  Tr. 512.  Eugene Charbonneau, D.O., assessed Plaintiff with chronic pain syndrome, depression, and Type II diabetes.   Tr. 512.

On November 1, 2013, Plaintiff visited Weems for an office visit.

Tr. 508.  A review of systems (for the subjective exam) was generally normal including a notation under musculoskeletal, "No arthalgias, myalgias, or joint swelling."  Tr. 508.  For the objective exam, under musculoskeletal, it is noted: "Normal symmetry, tone, strength and ROM. No effusions, instability or tenderness to palpation."[10]  Tr. 509.  *Id.*  Her physical examination showed that she was ambulating without difficulty; had a normal gait; her lungs were clear with no wheezes, rhonchi, or rails, and her breathing was unlabored. Tr. 508-09.  Plaintiff had no swelling or deformity in her chest wall; her extremities had no deformities, clubbing, cyanosis, or edema; she had normal symmetry, tone, strength, and range of motion, and had no effusions, instability, or tenderness to palpation in the musculoskeletal areas; she had no arthalgias, myalgias, or joint swelling.  She was diagnosed with chronic pain syndrome and depression. A review of systems was normal.  Her gait was within normal limits and she walked without difficulty.  Tr. 508-09.

---

[10]  The ALJ discussed Plaintiff's treatment at several health care providers as noted herein, including Weems and then stated:

> The claimant's subjective complaints are not supported by the objective medical evidence of record.  The claimant has been given the benefit of the doubt and the medical evidence of record was viewed in the light most favorable to the claimant.  However, the medical evidence of record supports the above [RFC] which includes her ability to perform light work with some limitations.

Tr. 20-21.

On January 20, 2012, Plaintiff appeared for a consultative examination with Miljana Mandich, M.D., a physician from New Orleans, Louisiana.  Tr. 408-12.  Plaintiff's major complaints included diabetes, high blood pressure, peripheral neuropathy, obstructive sleep apnea, hypothyroidism, fibromyalgia, and pains in her left hip and left knee. Tr. 408.  Dr. Mandich determined that Plaintiff was able to walk without any difficulty, had a normal gait and station, and did not need an assistive device.  Tr. 412.  Plaintiff had a normal cardiovascular examination including peripheral, but had decreased respiratory expansion.  *Id*. Although Plaintiff had limited flexion in her left knee to about 135 degrees and localized pain across the front of her knee and along the lateral compartment since she fell on her left knee at work in 2005, she had normal range of motion of all other joints and normal range of motion of the neck and lower back.  *Id*.  Dr. Mandich diagnosed Plaintiff with obstructive sleep apnea by history, adult onset non-insulin dependent diabetes, COPD, left knee pain with history of injury in September 2005, and "fibromyalgia by history."  *Id*.  Dr. Mandich did not indicate that Plaintiff's fibromyalgia caused any functional limitations.  *Id*.[11]

---

[11]  The ALJ considered Dr. Mandich's evaluation.  Tr. 21. The ALJ noted, in part, that Dr. Mandich's assessments did not contain any opinion regarding functional limitations and, as a result, the ALJ did not consider it for that purpose, although the ALJ noted that the assessments supported her RFC assessment.  *Id*.

The ALJ considered the physical RFC assessments completed by Anthony Scardino, M.D., in February 2012, and Gloria Hankins, M.D., completed in July 2012.  Tr. 21-22.  Both physicians concluded that Plaintiff could perform less than a full range of light work.  *Id.*  The ALJ noted that the medical evidence suggested that Plaintiff was more limited physically and, as a result, gave their opinions "some weight."  *Id.*

In determining Plaintiff's RFC, the ALJ also considered Plaintiff's pre-hearing statements and hearing testimony.  Tr. 19-20, 22.  In light of her review of the evidence, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  Tr. 19-20.  The ALJ also determined that

> the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations.  While the record supports some level of functional limitations related to the claimant's impairments, it does not support the significant restrictions alleged by the claimant.  I have specifically considered the effects of the claimant's severe impairments, both singly and in combination with all impairments.

Tr. 20.  After discussing all the evidence, the ALJ made additional credibility findings related to the RFC assessment.

> As for the issue of the claimant's credibility, I note that some of her statements are internally inconsistent, a finding which tends to suggest that her allegations of disabling symptoms are not fully credible.  For example, the claimant testified that she shops, washes dishes, vacuums, does the laundry and can cook.  The claimant reported that she has no problems with personal care and on a daily

basis she spends time with others (Exhibit 5E).  In addition, the claimant's treatment has been very conservative.  All of the foregoing is inconsistent with debilitating pain and chronic depression, which suggests that the claimant symptoms are not as severe and intense as she contends.

In sum, the above [RFC] assessment is supported by the medical evidence of record and medical opinions.  Considering the medical signs and findings in the record, the claimant's daily activities and abilities, the claimant's medication and treatment history, all the medical opinions of record, and my assessment of the claimant's credibility, I find that despite her impairments, the claimant retains the ability to perform work within the limitations set forth above.

Tr. 22.[12]  Thus, in determining Plaintiff's RFC, the ALJ considered the

relevant medical evidence and Plaintiff's reports of symptoms and pain.

The credibility of the claimant's testimony must also be considered in

determining if the underlying medical condition is of a severity which can

reasonably be expected to produce the alleged pain.  Lamb v. Bowen, 847

F.2d 698, 702 (11th Cir. 1988).  After considering a claimant's complaints

of pain, an ALJ may reject them as not credible.  See Marbury, 957 F.2d at

839 (citing Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984)).  If an

ALJ refuses to credit subjective pain testimony where such testimony is

critical, the ALJ must articulate specific reasons for questioning the

---

[12]  The ALJ may consider a claimant's daily activities when evaluating subjective complaints of disabling pain and other symptoms.  Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. § 416.929(c)(3)(i).  But see Lewis v. Callahan, 125 F.3d at 1441 ("participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability).

claimant's credibility.  *See* <u>Wilson v. Barnhart</u>, 284 F.3d 1225.  Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.  *Id.*

Subjective symptoms can be overstated, so a claimant's subjective allegations of pain or other symptoms alone will not establish that he is disabled.  42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 416.928(a), 416.929(a).  Pain is subjectively experienced by the claimant, but that does not mean that only a mental health professional may express an opinion as to the effects of pain.  One begins with the familiar way that subjective complaints of pain are evaluated:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing:  (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

<u>Wilson</u>, 284 F.3d at 1225.  *See* 20 C.F.R §§ 416.929 (explaining how symptoms and pain are evaluated); 416.945(e) (regarding RFC, total limiting effects).[13]

---

13  Although the ALJ did not expressly refer to the three-part part standard, it is clear that the ALJ's findings, discussion, and citation to 20 C.F.R. § 416.929, Tr. 18, indicate that the pain standard was applied.  <u>Wilson</u>, 284 F.3d at 1226.

An ALJ may credit subjective pain testimony even if objective evidence is lacking.  But this is merely permissive guidance.  It does not mandate belief in the subjective testimony where the substantial evidence in the record indicates otherwise.  After all, in making the credibility finding, the ALJ is directed to articulate the findings based upon substantial evidence.  Substantial evidence may consist of objective medical findings, a lack of other objective medical findings, evidence of exaggeration, inconsistencies in activities of daily living, failure to pursue recommended physical therapy or to take prescribed medications, and the like.

The ALJ considered the evidence and found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the RFC of light work. Tr. 18.

In assessing Plaintiff's credibility, the ALJ considered Plaintiff's activities of daily living and abilities, medication and treatment history, and very conservative treatment, finding the "foregoing is inconsistent with debilitating pain and chronic depression, which suggests that the claimant symptoms are not a severe and intense and she contends." Tr. 22.  The

ALJ concluded that Plaintiff retained "the ability to perform work within the limitations" set forth in the ALJ's RFC assessment.  *Id.*

Substantial evidence supports the ALJ's credibility determinations and RFC assessment.  *See* Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court.").

II.

Plaintiff also argues that the ALJ and the Commissioner erred in not ordering additional consultative examinations to more fully develop reports of Plaintiff having fibromyalgia.  ECF No. 22 at 10-11.  Plaintiff further claims that the ALJ penalized Plaintiff because she could not afford more treatment to support her claim.[14]  *Id.*

In completing the five-step sequential evaluation process, the ALJ has a duty to develop a full and fair record, regardless of whether the claimant is represented by counsel, Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).  The ALJ's failure to fulfill his duty to fully develop the record, however, only necessitates a remand if "the record reveals

_____

[14]  There is no persuasive evidence that Plaintiff was denied needed medical care based on an inability to pay.

evidentiary gaps which result in unfairness or 'clear prejudice'." Graham v. Apfel, 129 F.3d 1420, 1422-23 (11th Cir. 1997) (citation omitted).

The American College of Rheumatology has stated that fibromyalgia is both real and difficult to confirm. *See generally* Frederick Wolfe, *et al.*, The American College of Rheumatology Preliminary Diagnostic Criteria for Fibromyalgia and Measurement of Symptom Severity, 62 Arthritis Care & Research 600 (May 2010).  An extensive body of case law pre-dates the effective date of SSR 12-2p, 2012 SSR LEXIS 1 (July 25, 2012).  *See* Johnson v. Colvin, Case No. 1:14cv149-WS/CAS, 2015 U.S. Dist. LEXIS 55388, at *31-38 (N.D. Fla. Mar. 25, 2015), *adopted*, 2015 U.S. Dist. LEXIS 55381 (N.D. Fla. Apr. 27, 2015), for a discussion of the legal standards in cases pre-dating SSR 12-2p and a discussion of SSR 12-2p.

At step two of the sequential evaluation process, the ALJ considered Plaintiff's allegation of "having fibromyalgia all over her body."  Tr. 18.  The ALJ noted, however, that "she has not been diagnosed pursuant to the requirements of Social Security Rule [sic] 12-2p.  Therefore, I find that the claimant's diagnosis of unspecified myalgia and myositis is more appropriate (Exhibit 12F/10)."  *Id.*  Plaintiff does not argue that the ALJ erred at step two.  ECF No. 22.

There are patient notes in the record that reference fibromyalgia and some of these observations are referred to herein in Section I.  *See supra* at 11-18.  Social Security Ruling 12-2p provides for two sets of criteria that afford a claimant the opportunity to demonstrate that they have fibromyalgia.  *See* Johnson, 2015 U.S. Dist. LEXIS 55388, at *36-37. Although there are patient notes referring to Plaintiff and fibromyalgia, the same patient notes do not indicate that this condition has caused Plaintiff disabling limitations.  *See* Moore, 405 F.3d at 1213 n.6.  No medical source opined that Plaintiff's symptoms, assessments, or diagnoses of fibromyalgia suggest that she is disabled.  There is no mention in this record that Plaintiff was referred to or examined by a rheumatologist.

Further, a diagnosis of fibromyalgia does not automatically lead to a finding of disability.  *See, e.g.*, Hernandez v. Comm'r of Soc. Sec., 523 F. App'x 655, 657 (11th Cir. 2013) (unpublished).  When assessing the claimant's RFC, even when fibromyalgia is diagnosed, "a diagnosis or mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work."  Wind v. Barnhart, 133 F. App'x 684, 690 (11th Cir. 2005) (unpublished) (quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)).  In other words, functional limitations determine

disability.  Moore, 405 F.3d at 1213 n.6 (citing McCruter v. Bowen, 791 F.2d at 1547).

Plaintiff's symptoms, like diagnoses, did not establish functional limitations.  *See* 20 C.F.R. §§ 416.928(a), 416.929(a), 416.945(a), 416.969a.  Symptoms are considered with the other evidence in the record to determine a claimant's ability to work and specifically in assessing the claimant's RFC.  *Id.*

Plaintiff appeared pro se at the hearing.[15]  The regulations provide that if the evidence is insufficient to determine whether the claimant is disabled or the adjudicator cannot reach a conclusion about whether the claimant is disabled, the adjudicator "may" order a consultative examination.  20 C.F.R. § 416.920b(c)(1), (c)(3).  The regulations do not require ordering a consultative examination unless the ALJ deems it necessary.  Moreover, although the ALJ "has a basic obligation to develop a full and fair record, . . . . there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded . . . . for further development of the

---

[15]  "A Social Security claimant has a statutory right, which may be waived, to be represented by counsel at a hearing before an ALJ."  Graham v. Apfel, 129 F.3d at 1422 (citations omitted).  Plaintiff affirmatively waived her right to be represented during the hearing, *see supra* at 2-3.  *See also* Brown v. Shalala, 44 F.3d 931, 934-35 (11th Cir. 1995).  Nevertheless, "[w]hether or not the applicant is represented, the ALJ still has a duty to develop a full and fair record."  *Id.* at 934 (citation omitted).

record." Graham v. Apfel, 129 F.3d at 1422-23 (citations omitted). Plaintiff has not shown that there are "evidentiary gaps in the record which have resulted in prejudice sufficient to justify a remand," Graham v. Apfel, 129 F.3d at 1423, even if a heightened degree of scrutiny is applied. Brown v. Shalala, 44 F.3d at 934-35.

The record contains sufficient evidence for the ALJ to make an informed decision. Plaintiff did not show that the absence of an opinion from a second consultative examiner prejudiced her claim. She also did not show that the ALJ needed to do more to develop the record, including the need for additional, but missing medical records. *See* Tr. 13 (ALJ noting that records from Volunteers "were eventually found and accepted into evidence (Exhibits 20E, 21E, 22E, 24E, 9F, 10F, 11F, 12F)"). Plaintiff did not show that her fibromyalgia or her condition as a whole caused additional limitations on her ability to work. The ALJ's decision is supported by substantial evidence and she correctly applied the law. *See* Land v. Astrue, Case No. 5:09cv369/SPM/MD, 2011 U.S. Dist. LEXIS 21694, at *22-24 (N.D. Fla. Jan. 6, 2011) (affirming Commissioner's denial of disability benefits despite treating rheumatologist's impression of

fibromyalgia), *adopted*, 2011 U.S. Dist. LEXIS 21773 (N.D. Fla. Mar. 3, 2011).[16]

## V.  Conclusion

Considering the record as a whole, the findings of the Administrative Law Judge are based upon substantial evidence in the record and she correctly applied the law.  Accordingly, the decision of the Commissioner to deny Plaintiff's application for SSI is **AFFIRMED**.  The Clerk is directed to enter **JUDGMENT** for Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on May 17, 2016.

**s/  Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

---

[16]  In Land, the ALJ determined that giving the claimant the benefit of the doubt, the claimant had fibromyalgia and that it was severe.  2011 U.S. Dist. LEXIS 21694, at *22.  The ALJ, however, did not credit the claimant's subjective complaints of disabling pain and determined that her fibromyalgia was not so severe as to be disabling from any work.  *Id.* at 22-24.  No error was shown.  *Id.*